Date Signed:
June 16, 2023



SO ORDERED.

Robert J. Faris
United States Bankruptcy Judge

# UNITED STATES BANKRUPTCY COURT

# DISTRICT OF HAWAII

| | |
|---|---|
| In re:<br><br>APRIL LYNNE PADELLO,<br><br>Debtor. | Case No.: 20-00220<br>Chapter 13<br><br>Related: ECF 131 |

## ORDER REGARDING PAYMENT OF ATTORNEYS' FEES

The debtor's attorneys argue that they are entitled to receive the entire amount of the debtor's chapter 13 plan payments until their administrative expense claim for attorneys' fees and costs is paid in full. The trustee disagrees, arguing that a portion (the amount of which the trustee does not specify) should be left for distribution to a secured creditor.

Ms. Padello's confirmed plan, as modified, requires her to pay $570.34 per month for the first thirty-five months and $775.00 per month for the

1

remaining forty-nine months of the plan term. She has faced multiple challenges in the case. She has struggled with her mortgage payments, her plan payments, and her car payments. Fortunately, with the assistance of her attorneys, she has overcome the challenges so far by modifying her confirmed plan, seeking loan modifications, and resolving motions to modify the automatic stay. *See, e.g.*, ECF 81, 98, 114, 128, 129. Three years remain under her current confirmed plan.

Because of these difficulties, the attorneys' fees have been unusually high. Ms. Padello's attorneys, Abelmann Peterson LLLC, were allowed $4,950 when the plan was confirmed, of which the trustee has paid about $2,683 out of Ms. Padello's plan payments. Abelmann Peterson now seeks an additional $10,864.62 for post-confirmation services. The firm's application requests that the trustee pay to the firm the entire amount of Ms. Padello's plan payment (minus the trustee's statutory fee) until the fees and expenses are paid in full.

The trustee does not object to the total amount requested but does object to the payment proposal. The trustee points out that, if the payment

2

proposal is adopted, the debtor's car lender will not receive any distributions for at least sixteen months. As a result, Ms. Padello will have to pay more interest on the secured claim, and the lender may renew its motion for relief from the automatic stay to repossess the car, arguing that its security interest is not adequately protected.

Abelmann Peterson argues that the trustee lacks standing to advocate for the car lender. I disagree. The trustee is objecting because he fears that, if the court approves Abelmann Peterson's proposal, Ms. Padello could be unable to complete her plan. This is an appropriate issue for the trustee to raise. The chapter 13 trustee plays a key role in the confirmation, performance, and consummation of a plan. A chapter 13 trustee must "assist the debtor in performance under the plan," § 1302(b)(4), may move to convert or dismiss the case if the debtor defaults under the plan, § 1307(c)(6), and may move to modify the plan, § 1329(a). By taking his position on Abelmann Peterson's application, the trustee is carrying out his statutory duties.

Turning to the merits, resolving this dispute requires me to consider

3

the Bankruptcy Code, the confirmed plan, and the Local Bankruptcy Rules ("LBR").

Chapter 13 of the Code gives special rights to debtors' attorneys. The court may award compensation to the debtor's counsel for representing the interest of the debtor in the case. § 330(a)(4)(B). Such compensation is an administrative expense, § 503(b)(2), with priority over all claims (other than "domestic support obligations"), § 507(a)(2). A chapter 13 plan must provide for full payment of all administrative expense claims. § 1322(a)(2).

Chapter 13 also gives special rights to secured creditors. A chapter 13 plan must provide for full payment, with post-petition interest, of secured creditors who do not accept the plan and whose collateral the debtor wishes to retain. § 1325(a)(5)(B)(ii). Periodic payments must be in "equal monthly amounts," § 1325(a)(5)(B)(iii)(I)[1], and must be sufficient to provide "adequate protection," § 1325(a)(5)(B)(iii)(II).

Sometimes, these special rights conflict with one another. The requirement of full payment of administrative expenses can make it difficult

---

[1] Neither party has briefed or argued the issue of whether the payment proposal violates the "equal monthly amounts" requirement.

or impossible for a debtor to make the required payments to secured creditors.

The Code does not resolve these conflicts. Unhelpfully, Section 1326(b)(1) provides that, "before or at the time of each payment to creditors under the plan, there shall be paid" any unpaid administrative expense. In other words, priority in right to payment does not necessarily require priority in time of payment.

The trustee acknowledges that this section gives the court discretion to decide when administrative expense claims are paid. ECF 141 at 14. Abelmann Peterson argues that the section is intended to prevent "repeat filers [from] backload[ing] payments until the end of the plan . . . ." But the section says nothing about repeat filers; to the contrary, it applies equally to all cases.

I conclude the Code simply does not say whether Abelmann Peterson should get the entire plan payment or instead the car lender should get a portion. Rather, the Code permits either outcome.

The plan is clearer than the Code. It provides that the trustee will

5

distribute the monthly payments to "[t]he debtor's attorney fees allowed under applicable rules and guidelines" before making distribution to "[c]laims in Class 1-7." (The car lender's claim is placed in class 2.) The language of the plan is crucial because it is binding on the debtor and each creditor, § 1327(a), and has preclusive effect.

The trustee relies on LBR 3070-2(i)(3)(A), which provides that attorneys' fees for post-confirmation services "shall be paid monthly in an amount specified in the fee application at the same time of each payment to holders of secured claims." The trustee reasons that counsel's administrative claims must be paid "at (but not before), the time each payment to secured creditors under the plan is made." ECF 141 at 15.

The trustee's argument has two flaws.

First, it assumes that the LBR modifies the plan. The plan does not expressly incorporate LBR 3070-2; it does provide that the fees are to be "allowed under applicable rules and guidelines," but "allowance" means fixing the amount of the claim; allowance does not govern the timing of distribution on account of that claim. *Compare* § 502(a) (defining an

6

"allowed" claim) *with* § 726 (specifying the order of distribution on account of allowed claims).

Second, the trustee's reading of LBR 3070-2 would not limit counsel's power to fix the portion distributable to the secured creditor. Abelmann Peterson's application proposes that it receive the entire $697.50 net monthly payment. If Abelmann Peterson had proposed instead that it would receive $697.49 and the secured creditor would receive $0.01 per month, the proposal would technically comport with the trustee's reading of LBR 3070-2, but this result would be absurd.

Although I do not agree with the trustee's interpretation of LBR 3070-2, I do agree with his assessment of the likely practical consequences of Abelmann Peterson's proposal. If the plan distributions to the car lender stop for about sixteen months, the car lender may not stand idly by. During that period, the debt will grow as interest accrues and the value of the collateral will decline as the car ages. Thus, there is a good chance that the car lender will file another motion for relief from the automatic stay. This would require Ms. Padello to incur more attorneys' fees and might require her to

7

make additional payments to the car lender. Considering her prior difficulties with keeping her mortgage and plan payments current, she may not be able to afford these additional amounts.

In the absence of any contrary evidence, I will assume that Abelmann Peterson has carried out its professional duty to "provide [Ms. Padello] with an informed understanding of [her] legal rights and obligations and explain their practical implications," Hawaii Rules of Prof. Conduct preamble para. [2]. I also assume that Abelmann Peterson has secured her consent to the proposal after "consultation," meaning that Abelmann Peterson has given Ms. Padello "information reasonably sufficient to permit [her] to appreciate the significance of the matter in question." *Id* . rule 1.0(c), 1.4. I also assume that, if the car lender moves for relief, Abelmann Peterson will participate in a solution.

Accordingly, I will grant the application. Abelmann Peterson shall submit an order in the usual form.

**END OF ORDER**

8